## SAMUEL C. RUCKER v. JAMES STEELMAN.

1. *Double Pleading.*—A pleading cannot be both a counter-claim and an answer.

2. *Redemption Under Foreclosure Sale.*—The act of 1861, allowing redemption from foreclosure sales, does not apply retrospectively to contracts made before it took effect.

3. *Statute of Frauds.*—An agreement to hold lands until the happening of a designated event and then to convey, is within the statute and must be in writing. Nor does an allegation of possession in itself take the case out of the statute; it must further appear that the possession was taken under the parol contract—*Tinkler* v. *Swayne* distinguished.

4. *Consideration of a Promise to Purchase Lands.*—Where parol agreement is made for a future purchase of lands which the party who is to sell and convey has no title to or interest in, there is no consideration for the promise of the other party and the agreement is within the Statute of Frauds, and the payment of the purchase money does not constitute a part performance.

5. *Presumption as to Foreclosure.*—The presumption is in favor of the acts of courts and of public officers, and in the absence of any showing to the contrary, it will be presumed that, in foreclosure, the court entered the proper decree and the Sheriff properly executed it. And this applies to suits for the forclosure of two mortgages together.

6. *Premature Issue of Sheriff's Deed.*—Where a right of redemption exists, and the Sheriff's deed is executed before the year allowed for redemption expires, the premature issue can only be attacked in an action begun before the expiration of the year. The right to redeem must be executed within the time allowed.

7. *Requisites of Counter-Claim—Pleading.*—A counter-claim is to be regarded as a distinct and independent pleading, and it must properly aver such facts as warrant affirmative relief.

8. *Certificate of Sale.*—The failure of a sheriff to execute a certificate to the purchaser does not invalidate the sale.

9. *Description of Land.*—The part of a deed describing the premises conveyed, must be liberally construed. It is not the office of a description to identify the land, but to furnish the means of identification.

10. *Proving Boundaries.*—Where proof of possession is unnecessary, the boundaries need not to be located.

11. *Evidence to Support a Sheriff's Deed.*—Such a deed is supported by proof of a valid judgment, a sale, and the execution of the proper deed.

Filed May 23, 1881.
Appeal from Clark Circuit Court.

John H. Stotsenburg, for appellant, cited *Myers* v. *Cochran,* 29 Ind. 256; *Gallion* v. *McCaskin,* 7 Blackf. 90; *Spath* v. *Hankins,* 55 Ind. 155, as to effect of notice of outstanding title to purchaser without previous notice. Occupancy sufficient to put purchaser on inquiry, *Glidewell* v. *Spaugh,* 26 Ind. 322. As to definition of a contract, Chitty on Contracts, p. 9. As to certainty of description in deed, *Goodnight* v. *Fanson,* 7 Mod. 457; *Cottingham* v. *King,* Barr, 524. In additional brief appellant cited *Finkler et al.* v. *Swayne* (present term.)

M. C. Hester, for appellee, distinguished *Spath* v. *Hankins,* 55 Ind. 155, as to notice. That the demurrer properly raised the defense of the Statute of Frauds, *Foll* v. *Hazeling,* 45 Ind. 576; 66 Ind. 261. As to contract, *Scoby* v. *Gibson,* 17 Ind. 572. As to assignment of error being necessary, 34 Ind. 401. As to correction of record, 62 Ind. 78; 33 Ind. 143.

D. C. Anthony, for appellee, cited *Scobey* v. *Gibson,* 17 Ind. 512, as to retroactive effect of redemption act. As to Statute of Frauds, 30 Ind. 228. Sheriff's sale cannot be collaterally attacked, *Davis* v. *Campbell,* 12 Ind. 192. As to *res adjudicata,* 25 Ind. 458. Effect of subsequent purchase by one having notice from an innocent purchaser, 1 Am. Lead. Cas. 53; *Hagthorp* v. *Hooks,* 1 Gill & J. 273. As to description in ejectment, 5 Blackf. 143; Ad. on Ejectment, 23; 27 Ind. 294; *Moore* v. *Griffin,* 9 Shep. 350.

Opinion of the court by Mr. Justice Elliott.

The appellee's complaint against appellant is for the recovery of the possession of real estate, and is in the ordinary form. The answer of the appellant is in three paragraphs, the first is a general denial, the second and third set up affirmative defenses by way of counter-claim.

Demurrers were sustained to the second and third paragraphs, and we are required by the assignment of errors and the brief of counsel, to consider the questions presented by these rulings.

The material allegations of the second paragraph, exhibited in a condensed form, are substantially these: On the 21st day of March, 1861, appellant executed to one John King a mortgage upon the real estate in controversy to secure the payment of $2,000; on the 10th day of October, 1873, the Clark Circuit Court, in a suit upon said mortgage, rendered a decree of foreclosure; on the first

day of November of said year the property was sold by the sheriff to the said King for $2,200, and on the 20th day of that month a deed was executed. Prior to the commencement of the foreclosure suit, on the 12th day of September, 1871, David W. Daily recovered judgment against appellant for the sum of $1,360, and on this judgment the real estate in controversy was sold to one Warren Horr for $200, on the 16th day of December, 1871, who received a sheriff's certificate, which was afterwards assigned to said John King. On the 1st day of December, 1872, appellant made a verbal agreement with his brother, George I. Rucker, with King's knowledge and consent, for the redemption of the real estate; that pursuant to this agreement, George I. Rucker paid King $275, and the latter assigned to the said George I. Rucker the certificate of sale. The said George I. Rucker obtained a deed from the sheriff on the 26th day of December, 1876. In March, 1876, a similar verbal agreement was made between the two Ruckers with the knowledge and consent of King, as to the redemption of the property from the sale made upon the decree of foreclosure, and in pursuance of this agreement the said George I. Rucker paid to King the sum of $2,000, and King thereupon conveyed the property to George W. Rucker, a son of the said George I. Rucker. Afterwards George I. and George W. Rucker conveyed the premises to the appellee, who, to quote from the pleading, " had sufficient notice and knowledge to put him on inquiry that the conveyances to the said George I. and George W. Rucker were solely for the use and benefit of the defendant, and were intended to be and were securities only for the re-payment of the money advanced by said George I. Rucker." The property, at the time of making the verbal agreements, and at the time of the various sale and conveyances, was in appellant's possession, who, during all the period covered by these transactions, was claiming title. The prayer is for affirmative relief, the adjustment of accounts between the parties and the quieting of appellant's title.

The pleading is a counter-claim and not an answer; it cannot be both. If it is not good as a counter-claim, then the demurrer was properly sustained.

One of the questions arises upon the allegation charging appellee with notice of the character of the conveyances made to, and by, George I. and George W. Rucker. Appellee insists that the

counter-claim is in this particular radically defective, and that the pleading, instead of stating facts, has stated a mere conclusion of law. We think the allegation sufficient to withstand attack by demurrer. Whether it would be sufficient upon a motion to make more specific is another question.

The controlling question is as to the validity of the verbal agreements upon which the appellant relies. He paid no money to King, nor did he pay any to the appellee's grantor; all the money which was paid was advanced by the latter out of his own means. It cannot, therefore, be held that the present case is within the rule applying to cases where purchase money is paid by one and title taken in the name of another. Nor can the case be brought within the rule that the Statute of Frauds cannot be used to perpetrate a fraud. No fraudulent representations were made by the appellee, nor was any undue advantage taken of the appellant. At the time the verbal agreements are alleged to have been made, King was the owner of the real estate; the absolute title was vested in him by the sale made upon the decree of foreclosure. The contract upon which that decree was rendered was made before the redemption law of 1861 went into force, and there was, therefore, no right to redeem. *Scobey* v. *Gibson*, 17 Ind. 572. No right was taken from the appellant, because he had none. King held the title free from all equities, and the acquisition of title by George I. Rucker was not by way of redemption, but by way of purchase. There was no reason why the appellee's grantor might not purchase an absolute title; nothing, certainly, in the relation occupied to the appellant which prevented him from doing so. The element of fraud does not, therefore, enter into the case made by the counter-claim.

The verbal agreements, which the appellant's pleading sets forth, were, in reality, for the purchase of lands. When these agreements were made, the appellant had no interest, either legal or equitable, in the land. The sale and conveyance by the sheriff extinguished all the rights of appellant, and vested an absolute title in King. It was this title which was purchased of and conveyed by King. The most favorable construction which can be given the verbal contracts relied upon is, that they, in terms, if not in legal effect, gave to the appellant a right to purchase from George I. Rucker, upon payment of the money which he had paid to King. If this is the cor-

rect construction of these verbal agreements, then they were clearly within the statute, for they were contracts for the sale of lands.

Treating the facts stated as showing a promise on the part of George I. Rucker to hold the land for the appellant, the counter-claim must still be held bad. An agreement to hold lands until the happening of a designated event, and then to convey, is within the statute. In *Johns* v. *Norris*, 22 N. J. 102, it was held that an agreement with an execution defendant to purchase property for him at a sheriff's sale, and to hold for him for a certain time, will not create a trust, and that such an agreement is void by the Statute of Frauds. In *Merrett* v. *Brown*, 6 C. E. Green, 401, Chief Justice Beasley said: "When, therefore, the elements of the case are simply a purchase under a promise to hold for the benefit of the defendant in execution, I think such an arrangement, the Statute of Frauds being set up, cannot be enforced either at law or in equity." The case of *Payne* v. *Patterson*, 77 Pa. St. 134, affords a forcible illustration of the doctrine under discussion. There is also a very great similarity between the present case and that of *Loomis* v. *Loomis*, 60 Barb. 22, where a contract remarkably like those relied upon by the appellant was held to be within the statute. We quote from the opinion in that case the following: "The plaintiff, at the time of the agreement, had no title or interest in the property in question, and there was no legal consideration received from him for the promise made by the defendant, and this is another difficulty thrown in his way by the Statute of Frauds." But we need not cite cases from other courts for the purpose of sustaining the general doctrine here stated, for our own court has fully considered and settled the question here involved. *Minot* v. *Mitchell*, 30 Ind. 228; *Pearson* v. *East*, 36 Id. 27; *Blair* v. *Bars*, 4 Bkf. 539.

The allegation in the counter claim that the appellant was in possession, claiming title, is not sufficient to take the case out of the statute. In order to have this effect it must appear that the possession was taken under the parol contract. *Neal* v. *Neal*, 69 Ind. 419.

Counsel refer us to the case of *Tinkler* v. *Swayne et al.*, decided at the present term. That case is essentially different from the present. There the parties who entered into the contract had a right to redeem the land which was the subject matter of the con-

tract, and this fact of itself distinguishes the case from the one in hand, for here the appellant had no interest whatever in the land at the time the verbal agreements were made. He surrendered no right and parted with no interest in the land, for he had none. But the case cited by the appellant does not decide that the parol contract therein relied upon was valid, but the decision is rested upon the ground that there was such part performance as took the case out of the statute. The only way in which the appellant could have acquired the title which the sheriff's sale had vested in King was by purchase, and in order to have established a valid contract of purchase he must have shown either a written contract, or verbal contract partly performed. There was here no part performance; had the entire purchase money have been paid it would not have been part performance (*Johnston* v. *Glancy*, 8 Bkf. 94), and as we have already seen, possession was not taken under the contract.

It is difficult to summarize the allegations of the third paragraph of the counter-claim, and for that reason the material are given in full. The substantive parts of said pleading are as follows:

"That the plaintiff Steelman's title is based on a pretended deed from the sheriff of Clark county, executed to one John King, November 20, 1873, under whom, as grantee in said deed, the said Steelman claims title through one or more grantees; that said deed is void, because, he says, that heretofore, to-wit, on March 5, 1873, the said John King instituted against this defendant a proceeding in foreclosure of two certain mortgages, one recited in his first paragraph of complaint, being founded upon a mortgage executed October 20, 1869, conveying a piece of land other than that described in the complaint; and the other, recited in the second paragraph of his complaint, being founded on a mortgage dated March 21, 1861, to secure a note of like date for $1,781, payable with interest from date, no rate of interest at all being recited therein, the same having been executed before the redemption law of Indiana was enacted. That such proceedings were had in said cause; that on October 10, 1873, a new contract or agreement was made in writing with respect to the said last named indebtedness, as well as the first above recited, wherein it was agreed that judgment should be that day rendered in favor of plaintiff for $2,100 on the second paragraph of

the complaint and for the foreclosure of the mortgage described in said paragraph, the said judgment to bear ten per centum interest per annum from date. Thereupon judgment was rendered on said day by agreement for the sum of $3,200, so as to include the amounts due on both mortgages. That the land was sold by the sheriff on the 15th day of November, 1873, to John King; that no certificate was ever issued to said King, but that on the contrary the said King obtained and received from said sheriff a deed of conveyance.

Appellant's theory is that the contract entered into on the 10th day of October, 1873, created a new and distinct cause of action, and that, as the judgment was based thereon, the act of 1861 governed the sheriff's sale and proceedings thereunder, and, therefore, the sheriff's sale was rendered void, because no certificate was issued to the purchasers. The effect given the agreement of October, 1873, by appellant is not warranted by its provisions. It did not extinguish, nor did it profess to extinguish, the contracts upon which the foreclosure suit was founded. These contracts were left in full force, and the judgment rendered rested upon them and not upon the agreement of October, 1873. The allegation of the pleading is that "the judgment was rendered for the sum of $3,200, so as to include amount due on both mortgages." It is clear that the decree and judgment were rendered on the contracts set out in the complaint filed in the foreclosure suit, and that the agreement of October, 1873, was a mere adjustment of the amounts due upon the mortgages declared on.

The presumption is in favor of the acts of public officers, and in the absence of any showing to the contrary we are bound to presume that the sheriff did his duty. There is no allegation that the real estate was not sold upon the decree rendered on the mortgage executed in March, 1861. There is nothing at all from which it can be inferred that the sale was upon the entire decree. We are bound to presume that the court entered the proper decree and that the sheriff properly excuted it. Not only is this the presumption of the law, but it is also the fair and natural inference from the facts pleaded. The mere fact that both mortgages were foreclosed by one decree does not prove that the proper directions as to the manner of conducting the sale were not embodied in it. It was just as

easy to have made the proper decree in the suit upon two mortgages as it would have been if suits had been brought upon each mortgage separately. It affirmatively appears that the mortgages were declared upon in distinct and separate paragraphs, and a decree making the proper provisions as to sale could have been readily entered.

If it were conceded that the sale by the sheriff was governed by the law of 1861, and the appellant entitled to redeem, he would still have no sufficient cause for counter-claim. The judgment was valid, the sale upon it regular, and by that sale the appellee's grantor acquired title. Even upon appellant's own theory the only thing lacking was the certificate which was mere evidence of title, not the substantive thing which created title. The deed which the sheriff executed to King was, according to appellant's argument, prematurely issued. Grant that this were true, yet the appellant shows no legal or equitable title to the land in controversy, for the year allowed for redemption had expired long before this action was brought. All the right which the sale left in the appellant, even upon his own theory, was the right to redeem within one year, and with the expiration of the year that right terminated. If, then, we accept his theory as correct and concede that he had a right to redeem within one year, we are still bound to conclude that his pleading is not good as a counter-claim; for certainly he is not entitled to defeat the appellee's sale. If we regard the pleading as an answer merely, then no harm was done in sustaining the demurrer, even conceding it to be sufficient, for the matters therein pleaded were clearly admissible under the general denial, but it is very certain that the pleading is a counter-claim, and not an answer. As it is a counter-claim it must stand as a distinct and independent pleading and properly aver such facts as warrant the granting of the affirmative relief sought.

The omission of the sheriff, conceding it to be such, to execute a certificate to the purchasers did not invalidate the sale. *Barnes* v. *Keilinger*, 7 Minn. 82. As the sale was valid the year of redemption dated from the day of the sale, and had, therefore, expired long before this action was instituted. The right to redeem is purely a statutory one, and must be asserted in strict conformity to the statute. The right must be exercised within the time and in the manner prescribed or it is lost. Rorer Jud. Sales, 433.

The questions presented upon the ruling refusing a new trial are in the main much the same as those disposed of in considering the rulings upon the pleadings.

The decree, return of sheriff thereon, and the deed executed by him, show that the mortgages foreclosed at the suit of John King were provided for by separate orders, that the lands described were sold separately and that for the land embraced in the mortgage executed in March, 1861, the sheriff delivered to the purchaser a deed, and for the lands embraced in the subsequent mortgage executed a certificate. This was right. From the sale made upon the contract executed in March, 1861, the appellant had no right to redeem, and the appellee was, therefore, entitled to a deed.

As one of the grounds for a new trial, the appellant assigns and argues that the description of the land in controversy, both in the mortgage and sheriff's deed, is insufficient. The description is as follows, to-wit: " The following real estate in Clark county, Indiana, part of surveys Nos. 56 and 75 of the Illinois grant, beginning at the Ohio river, at the southern corner of said surveys, and running thence with the original line dividing said surveys to the top of the cliff; thence in a direct line in a westerly direction to David W. Daily's line; thence in the same direction to the corner of land formerly owned by W. Henning; thence with said Henning's line to the river; thence up said river to the beginning, including the ferry, known as McDaniel's ferry, across the Ohio river."

The objection urged is that part of the land is in survey 41, and that the description should, therefore, have been parts of surveys 56, 41 and 75. The objection cannot prevail. Courses and distances are carefully given, and visible monuments, marking lines and corners, are described, and there can be no difficulty at all in locating and identifying the land conveyed by the mortgage and the deed. It is a familiar rule that the part of a deed describing the premises conveyed shall be construed with the utmost liberality. It is not the office of a description to identify the land, but to furnish the means of identification. *Colcord* v. *Alexander*, 67 Ills. 581; *Pauly* v. *Hayes*, 22 Iowa, 11; *German, etc., Co.* v. *Gwin*, 32 Ind. 249; *Peck* v. *Mallarns*, 10 N. Y. 509; *Mecklin* v. *Blake*, 19 Wis. 397; *State* v. *Breen*, 36 Mich. 77. Looking to the face of the conveyance, there is clearly a sufficient description. Parol evi-

dence was introduced by both parties upon the question as to whether any part of the lands were in survey 41, and upon this point there was some conflict; and, under the well-settled rule, we must allow the finding of the trial court to remain undisturbed. The description certainly did not make the deed or mortgage void for uncertainty, and the attempt to show that the deed conveyed other land than that in controversy was not successful, even if it had been proper. The defense by appellant was, under the 597th section of the Code, a confession that he was in possession of the property described in the complaint. Evidence of the boundaries of the land was, therefore, irrelevant. In *Voltz* v. *Neubert*, 17 Ind. 190, it was said: " Proof of possession in the defendant being unnecessary, the boundaries of the land, described by the plaintiff, are, in effect, conceded, and evidence tending to prove their location must, of course, be immaterial." *Applegate* v. *Doe*, 2 Ind. 169; *Doe* v. *Hull*, Id. 24; *Doe* v. *Hildreth*, Id. 274.

The inquiry, therefore, must be restricted to the question whether the description in the sheriff's deed was sufficiently certain to convey title; if it was, then the appellee was entitled to a verdict and judgment. All that the appellee was bound to prove was a valid judgment, a sale, and the execution of the proper deed, *Splahn* v. *Gillespie*, 48 Ind. 397. All questions respecting the validity of the mortgage were conclusively settled by the decree, and among them, of course, the sufficiency of the description of the property.

Judgment affirmed.